| State of Connecticut Department of Correction | DIRECTIVE NUMBER | EFFECTIVE DATE | | PAGE 1 OF |
|---|---|---|---|---|
| Case 3:03-cv-00071-JGM   Document 42-2 | 9.5 | Filed 06/22/2004   Page 1 of 30 | | 19 |
| ADMINISTRATIVE DIRECTIVE | 9.5 | March 5, 2003 | Page 1 of 30 | 19 |

| | SUPERSEDES: |
|---|---|
| | Code of Penal Discipline – 2/16/98 |

| APPROVED BY | TITLE: |
|---|---|
| *[signature]* 3/5/03 | Code of Penal Discipline |

1.  **Policy.** Inmates shall be held to the same level of individual responsibility as a member of the free public. As such, all privileges shall be earned and retained through positive performance and respect for rules, order and authority. Consistent with this policy, the Department of Correction shall provide for the orderly conduct of inmates by establishing rules of conduct and procedures to address misconduct. The Code of Penal Discipline shall establish acts of misconduct, the process for judging allegations of misconduct, and sanctions for violations. Disciplinary action shall be based on credible evidence of misconduct, and shall be timely, impartial and consistent. Sanctions shall be proportionate to the seriousness of the offense and the inmate's disciplinary record, and the disciplinary action shall serve to teach the offender the consequence of the misconduct and to enforce staff authority.

2.  **Authority and Reference.**

    A.  Connecticut General Statutes, Sections 18-7, 18-7a, 18-81, 18-98b through 18-98d.
    B.  American Correctional Association Standards for the Administration of Correctional Agencies, June 1979, Standard 39.
    C.  American Correctional Association, Standards for the Administration of Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4214 through 3-4236, 3-4240 and 3-4243.
    D.  American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-3C-01 through 3-ALDF-3C-22.
    E.  Administrative Directives 1.3, Administrative Directives, Manuals, Forms Management and Post Orders; 6.6, Reporting of Incidents; 6.14, Security Risk Groups; 9.2, Inmate Classification; and 9.4, Restrictive Status.

3.  **Definitions.** For the purposes stated herein, the following definitions apply:

    A.  **Accessory.** Assisting a person to commit an act prohibited under this Code.
    B.  **Attempt.** Conduct which is likely to result in an act prohibited by this Code.
    C.  **Confinement to Quarters (CTQ).** Is a penalty that shall be defined as: An inmate shall be confined to the cell or living area and shall not be permitted to:

        1.  attend general population recreation to include outside yard, dayroom, gymnasium and library;
        2.  attend work; and
        3.  attend school except for inmates under 21 years old.

ExhibiT James McKee

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.5 | March 5, 2003 | 2 | 19 |

| TITLE |
|---|
| Code of Penal Discipline |

An inmate may:

1.  attend visits;
2.  attend collective religious services;
3.  attend addiction services programs;
4.  use the phone;
5.  receive commissary;
6.  shower;
7.  attend meals with general population; and
8.  retain their own television and/or radio.

An inmate shall only be placed on CTQ for a maximum of 15 days.

D.  <u>Conspiracy</u>. Agreeing with one or more persons to participate in an act prohibited by this Code and any one of those persons acts in furtherance of the conspiracy.

E.  <u>Continuance</u>. Adjournment of a hearing until another time.

F.  <u>Contraband</u>. Anything not authorized to be in an inmate's possession; used in an unauthorized or prohibited manner or altered in any way.

G.  <u>Dangerous Instrument</u>. A weapon, or any other unauthorized object or substance, which may cause physical injury or death, under the circumstances in which it is possessed, used or attempted or threatened to be used, or is capable of being used.

H.  <u>Deferred Prosecution</u>. Deferral of the prosecution of a Disciplinary Report for a specific period of time.

I.  <u>Possess</u>. Having physical possession or exercising control over an object.

J.  <u>Privilege</u>. A benefit bestowed upon an individual to which a person has no right or legal entitlement.

K.  <u>Responsibility</u>. An individual's personal obligation or accountability for performance.

L.  <u>Security Risk Group</u>. A group of inmates, specifically designated by the Commissioner, which poses a threat to the safety of staff, the unit or other inmates.

M.  <u>Self Defense</u>. Protection of oneself from an unprovoked attack which cannot be avoided.

N.  <u>Serious Physical Injury</u>. Any injury which requires the individual to receive immediate medical treatment by a health care professional before the individual can continue normal activity.

O.  <u>Suspended Sentence</u>. The postponement of a disciplinary sentence for a specified period of time.

4.  <u>Notification</u>. This Code shall be disseminated as specified below. The Code shall be published in English and Spanish.

A.  <u>Employees</u>. Each direct contact employee shall receive a copy of the Code. Direct contact employees shall receive instruction on the Code during pre-service orientation training.

B.  <u>Inmates</u>. Each newly admitted inmate shall receive a copy of the Code and instruction on the Code within two (2) weeks of admission to the Department of Correction. Each inmate shall acknowledge receipt of the Code by signing a receipt which shall be placed in

the inmate's file. Unit Directives shall provide a process to
provide information about the Code to any inmate who is
illiterate, impaired, handicapped or does not speak English or
Spanish.

5.   **General Provisions**.  All privileges must be earned.  Each inmate shall
be responsible to follow all rules, policies, staff direction, and
satisfactorily comply with all work and program requirements to earn
access to available privileges.  Access to any privilege with limited
admission shall be offered to inmates who have maintained positive
behavior and obedience to rules, regulations and staff direction.  Each
facility shall develop a list of privileges available to inmates in
general population.  The type of privileges available shall be based on
a facility's security level and shall be authorized subject to the joint
approval of the Deputy Commissioner of Programs and the Deputy
Commissioner of Operations.

6.   **Access to Privileges**.

   A.   **Newly Admitted Inmates**. Upon admission, an inmate may be afforded
access to all privileges available at the admitting facility,
contingent upon conformity with institutional rules and staff
direction.

   B.   **Restrictive Status Inmates**.  Inmates placed on a restrictive
status or in a close monitoring unit shall lose access to
privileges.  The Unit Administrator of a facility containing a
restrictive housing or close monitoring unit may develop
procedures and time frames in which an inmate may earn access to
limited privileges based upon acceptable behavior and performance
in accordance with the appropriate restrictive status or close
monitoring programming.  The designated time frames shall be in
addition to any penalty received prior to or during the placement
on a restrictive status or in a close monitoring unit.  In all
cases, the privileges for the restrictive housing unit shall be
less than those in general population.

7.   **Unit Rules**.  Each unit shall establish its own written rules concerning
inmate conduct.  These rules shall be published in the inmate handbook
required by Administrative Directive 1.3, Administrative Directives,
Manuals, Forms Management and Post Orders.  The rules shall be posted in
inmate housing units and copies shall be placed in inmate libraries as
appropriate.

8.   **Relation to Criminal Proceedings**.  Proceedings under the criminal code
of the State of Connecticut against an inmate shall not cause the delay
of proceedings under this Code.  A dismissal, nolle or not guilty
verdict in criminal proceedings shall not affect action under this Code.
Any serious criminal offense shall be reported to the Connecticut State
Police for investigation and action.

9.   **Classes of Offenses**.  There shall be three (3) classes of offenses:  A,
B and C.  Class A offenses shall be the most serious offenses and Class
C offenses the least serious.

Exhibit / James Mc

Case 3:03-cv-00071-JGM   Document 12-2   Filed 06/22/2004   Page 4 of 30

10. <u>Authorized Sanctions</u>. An inmate who is in violation of the Code shall be sanctioned in accordance with the provisions of this Section.

A. <u>Limits</u>. Except as specifically provided in the Code the following punishment limits shall be observed:

  1. for Class A offenses: punitive segregation; forfeiture of good time; and two (2) different penalties;

  2. for Class B offenses: punitive segregation; forfeiture of good time; and one (1) penalty; and

  3. for Class C offenses: forfeiture of good time and one (1) penalty.

B. <u>Punitive Segregation</u>. Any commitment to punitive segregation shall be for a definite period of time, the maximum of which shall be:

  1. for conviction of offenses Section 12(D) (Assault on a Department of Correction Employee), Section 12(N) (Hostage Holding of a Department of Correction Employee), or Section 12(S) (Riot); up to 30 days. Any inmate found guilty of these offenses shall be reviewed for placement in Administrative Segregation prior to the completion of the punitive segregation sanction;

  2. for any class A offense committed by an inmate who is a verified member of a security risk group in accordance with Administrative Directive 6.14, Security Risk Group; up to 20 days;

  3. for all other Class A offenses: up to 15 days;

  4. for Class B offense: up to 10 days; and

  5. for Class C offense: punitive segregation may not be imposed except when the criteria of Section 10(E) are met.

When punitive segregation is imposed for multiple offenses arising from a single incident, it may be applied concurrently or consecutively. The maximum cumulative sentence to punitive segregation for offenses arising from a single incident shall not exceed the accumulation of two (2) consecutive sanctions.

C. <u>Forfeiture of Good Time</u>. Forfeiture of good time shall be imposed in accordance with provisions of this section.

  1. <u>Type</u>. There shall be three (3) types of good time subject to forfeiture:

    a. <u>Statutory Good Time</u>. An inmate may forfeit any or all statutory good time earned on the present sentence. In the event an inmate has not yet earned sufficient good time to satisfy a forfeiture, such good time shall be deducted from any statutory good time earned during the course of the current sentenced incarceration.

Case 3:03-cv-00071-JGM   Document 42   Filed 06/22/2004   Page 5 of 30

TITLE

## Code of Penal Discipline

b. **Presentence Good Time**. Presentence good time shall not be awarded at the time of sentence computation if an order to withhold credit has been issued in the disposition in a disciplinary report during presentence confinement. The amount of credit ordered to be withheld shall be proportionate with the seriousness of the offense and the inmate's disciplinary record. The actual credit withheld shall not exceed the amount earned during presentence confinement. Presentence good time shall not be subject to forfeiture for misconduct that occurs after the sentence commences.

c. **Outstanding Meritorious Good Time**. Outstanding Meritorious Good Time shall be subject to forfeiture in the amount earned on the date of the offense subject to the discretion of the Investigator or the Hearing Officer, and the Warden's designee.

2. **Amount**. The maximum amount of good time which an inmate may forfeit shall be: (a) 90 days for a Class A offense; (b) 60 days for a Class B offense; and (c) 15 days for a Class C offense except as authorized below:

a. The authorized forfeiture of earned good time may be doubled if the offense involves:

(1) assault on a Department of Correction employee which is classified as a Level 2 assault as defined in Administrative Directive 6.6, Reporting of Incidents;

(2) the use of a dangerous instrument against another person;

(3) serious physical injury of another person; or

(4) a member of a security risk group committing the offense.

b. The authorized forfeiture of earned good time may be quadrupled if the offense involves a dangerous instrument and also results in serious injury.

c. If the offense is one of the following the inmate shall be subject to forfeiture of all earned good time:

(1) Section 12(D) (Assault on a Department of Correction Employee), which is classified as a Level 1 assault as defined in Administrative Directive 6.6, Reporting of Incidents;

(2) Section 12(N) (Hostage Holding of a Department of Correction Employee);

(3) Section 12(J) (Felonious Misconduct); or

(4) Section 12(S) (Riot).

Exhibit Jan Mc...

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF | |
|---|---|---|---|
| 9.5 | March 5, 2003 | 6 | 19 |

| TITLE | |
|---|---|
| | Code of Penal Discipline |

D.  **Penalties.**  The following penalties may be imposed:

    1.    Reprimand;

    2.    Loss of recreation privilege up to 30 consecutive calendar days;

    3.    Loss of telephone privileges up to 90 consecutive calendar days.  The sanction may be compounded by doubling the time frame for each successive conviction of Security Tampering relating to telephone privileges;

    4.    Loss of commissary privileges up to 90 consecutive calendar days;

    5.    Loss or modification of social visiting privileges up to 60 consecutive calendar days;

    6.    Extra duty up to 24 hours which must be completed within one (1) week of disposition;

    7.    Confinement to quarters up to 15 consecutive calendar days;

    8.    Loss of social correspondence privilege up to 60 consecutive calendar days; and

    9.    Restitution for property theft or damage.

E.  **Increases.**  When an inmate has been found guilty for the third time in any six (6) month period arising from separate incidents, the sanction for the instant offense may be taken from those authorized for the next higher class of offense.  If the instant offense is a Class A offense, then up to four (4) penalties authorized in Section 10(D) above may be imposed and up to 120 days of good time may be forfeited.

F.  **Suspended Sentence.**  A disciplinary sentence for a Class A offense may not be suspended.  A disciplinary sentence for a Class B or C offense may be suspended for a period not to exceed 60 days.  If the inmate does not commit a classified offense under this Code during the period of suspension, the suspended sentence shall not be imposed.  If the inmate commits a classified offense during the period of the suspension, the suspended sentence and any sentence resulting from the new offense shall be imposed.  A sentence resulting from an offense committed during the time of a previously suspended sentence cannot be suspended.

G.  **Additional Sanctions Related to Security Risk Groups.**

    1.    **Security Risk Group Affiliation Violation.**  When an inmate is found guilty of Security Risk Group Affiliation the inmate shall without further hearing be designated as a Security Risk Group Member and, in addition to any applicable sanctions, shall be subject to the provisions of Administrative Directive 6.14, Security Risk Groups.

    2.    **Security Risk Group Safety Threat Violation.**  When an inmate is found guilty of Security Risk Group Safety Threat the inmate shall without further hearing be designated as a Security Risk Group Safety Threat Member and, in addition to any applicable sanctions, shall be subject to the provisions of Administrative Directive 6.14, Security Risk Groups.

    3.    **Additional Violations.**  An inmate who has been verified as a Security Risk Group Member in accordance with Administrative Directive 6.14, Security Risk Groups, shall without further

hearing be designated as a Security Risk Group Safety Threat Member if found guilty of any of the following disciplinary violations:

    a.    Assault; (Section 12(C))
    b.    Assault on a Department of Correction Employee; (Section 12(D))
    c.    Contraband, Class A (Possessing a Dangerous Instrument); (Section 12(F))
    d.    Creating a Disturbance; (Section 12(G))
    e.    Fighting; (Section 12(K))
    f.    Impeding Order; (Section 12(O)) and/or
    g.    Security Risk Group Safety Threat; (Section 12(V)).

In addition to any applicable sanctions, the inmate shall be subject to the provisions of Administrative Directive 6.14, Security Risk Groups.

H.    **Degree**.  The sanctions imposed shall be proportionate to the seriousness of the offense and the inmate's disciplinary record and shall be administered to regulate an inmate's future behavior.

11.    **Attempt, Conspiracy and Accessory**.  When supported by the evidence the offenses of Attempt, Accessory and Conspiracy shall be deemed to be included in the substantive offense without having to be separately charged.  Attempt, Accessory and Conspiracy shall be punishable in the same degree as if the substantive offense was committed.

12.    **Class A Offenses**.

A.    **Alteration of a Specimen**.  Adulterating, substituting, mislabeling or disposing of a required specimen.
B.    **Arson**.  Starting a fire or causing an explosion.
C.    **Assault**.  Physically attacking another person with or without the use of an object or substance.
D.    **Assault on a Department of Correction Employee**. Intentionally striking or attacking a Department of Correction Employee with or without the use of an object or substance or behaving in such a reckless manner that one's actions causes a strike of a Department of Correction Employee.
E.    **Bribery**.  Giving or agreeing to give to any person a benefit intended to influence that person's action or decision.
F.    **Contraband, Class A**.  Making, transferring or possessing: a dangerous instrument; any item of use in making, attempting or aiding an escape; unauthorized currency; drugs or drug paraphernalia; an intoxicating substance; unauthorized medication; tobacco or tobacco paraphernalia; or a tattoo machine or equipment.
G.    **Creating a Disturbance**.  Causing or participating in a general disturbance which involves any of the following Level 1 incidents in accordance with Administrative Directive 6.6, Reporting of Incidents: group disturbance; inmate work stoppage; organized disobedience, major destruction/disablement of state property; or any other incident which causes the alert of the Department's Emergency Response Units.

Exhibit _[handwritten signature]_

| DIRECTIVE NO. 9.5 | EFFECTIVE DATE March 5, 2003 | PAGE 8 OF 19 |
|---|---|---|

| TITLE | Code of Penal Discipline |
|---|---|

Case 3:03-cv-00071-JGM   Document 42-2   Filed 06/22/2004   Page 8 of 30

**H.** <u>Destruction of Property, Class A</u>. Damaging property with actual or replacement value of one hundred dollars ($100) or more.

**I.** <u>Escape</u>. Leaving a correctional facility without authorization; leaving escorted custody without permission; exceeding assigned limits of community release without permission; or failing to properly return from furlough.

**J.** <u>Felonious Misconduct</u>. Committing an act that would be a felony under the Connecticut General Statutes that is not a classified offense under this Code. Charging under this section requires the authorization of the Unit Administrator or designee and a specific statutory citation.

**K.** <u>Fighting</u>. Engaging in physical combat with another person.

**L.** <u>Flagrant Disobedience</u>. Disobeying a clearly stated order in a way that conveys a deliberate challenge to authority and jeopardizes the safety, security and orderly operation of the facility.

**M.** <u>Hostage Holding</u>. Taking, detaining or holding another person against the other person's will.

**N.** <u>Hostage Holding of a Department of Correction Employee</u>. Taking, detaining or holding of a Department of Correction employee against the employee's will.

**O.** <u>Impeding Order</u>. Impeding the order or security of the unit by intentionally or recklessly causing a grave risk of alarm, unauthorized assembly or engaging in disorderly conduct which severely interferes with the unit's normal operations.

**P.** <u>Interfering with Safety or Security</u>. Interfering with, resisting or obstructing the execution of a staff member's official duties.

**Q.** <u>Intoxication</u>. Being under the influence of alcohol or any intoxicating substance, or a drug other than a drug officially prescribed or issued by staff; or when the presence of any of these substances in the body is established by an approved scientific method of analysis.

**R.** <u>Refusal to Give a Specimen</u>. Refusing a direct order to provide a blood, urine or other required specimen within three (3) hours.

**S.** <u>Riot</u>. Inciting or participating in a general disturbance which results in a loss of control of all or a portion of a unit, serious injury, serious property damage or other organized disobedience to the rules of the unit. A charge of riot may be used only when the Commissioner declares that a riot has occurred and authorizes use of the charge.

**T.** <u>Secreting Identity</u>. Presenting false identification or wearing a hood or other garment for the purpose of concealing identity.

**U.** <u>Security Risk Group Affiliation</u>. Possessing or displaying any materials, symbols, colors or pictures of any identified security risk group; or behaviors uniquely or clearly associated with a security risk group.

**V.** <u>Security Risk Group Safety Threat</u>. Activity, behavior, status as a recognized Security Risk Group Leader or involvement in an event associated with a Security Risk Group which jeopardizes the safety of the public, staff or other inmate(s) and/or the security and order of the facility.

**W.** <u>Security Tampering</u>. Tampering with locking, security or safety devices, or any unauthorized or fraudulent use of the phone or mail system.

**TITLE**

### Code of Penal Discipline

X. **Self-Mutilation**. Intentionally inflicting bodily injury to oneself including tattooing and ear/nose piercing.

Y. **Sexual Misconduct**. Touching the sexual or other intimate parts of another, including kissing, for the purpose of gratifying the sexual desire of either party.

Z. **Theft, Class A**. Stealing or possessing stolen property with actual or replacement value equal to or in excess of one hundred dollars ($100).

AA. **Threats**. Making verbal or written statements, or engaging in physical conduct causing fear in another person.

BB. **Violation of Program Provisions**. Failing to comply with the procedures or restrictions of community release, furlough or other special program.

13. **Class B Offenses**.

A. **Bartering**. Conducting any unauthorized transaction for which payment of any kind is made, promised or expected.

B. **Causing a Disruption**. Inciting others or engaging in disruptive behavior which interferes with normal operations, for example: setting nuisance fires, harassing others by taunts, name calling or pushing, rattling bars, banging utensils or other objects or in any other manner creating loud or disturbing noises.

C. **Contraband, Class B**. Being in possession of unauthorized items; or of inmate personal property, state issue, or commissary items in excess of authorized amounts; or displaying nude or sexually explicit pictures.

D. **Destruction of Property, Class B**. Damaging any property with actual or replacement value less than one hundred dollars ($100).

E. **Disobeying a Direct Order**. Failing to comply expeditiously with an instruction of a staff member or failing to comply with any disciplinary sanction imposed.

F. **Gambling**. Betting for money, personal gain, or anything of value.

G. **Giving False Information**. Intentionally misleading staff in the course of official duties.

H. **Insulting Language or Behavior**. Using abusive or obscene language or making an obscene gesture.

I. **Misdemeanant Misconduct**. Committing an act that would be a misdemeanor under the Connecticut General Statutes that is not a classified offense under this Code. Charging under this section requires the authorization of the Unit Administrator or designee and a specific statutory citation.

J. **Out of Place**. Being present in an area without authorization, loitering or being in a location longer than necessary to accomplish an authorized purpose.

K. **Public Indecency**. Lewdly exposing one's body to the public or fondling/caressing one's intimate body parts before the public.

L. **Theft Class B**. Stealing or possessing stolen property with actual or replacement value of less than one hundred dollars ($100).

14. **Class C Offenses**.

A. **Disorderly Conduct**. Any nuisance or annoying behavior which interferes with the unit's order.

Exhibit Jann McK

DIRECTIVE NO.  Case 3:03-cv-00071-JGM    DIRECTIVE 12.2    Filed 06/22/2004    Page 10 of 30
9.5

EFFECTIVE DATE
March 5, 2003

PAGE    OF
10      19

TITLE

Code of Penal Discipline

B.  **Malingering**.  Failing to carry out instructions or assignments, in a timely manner.

C.  **Sanitary/Housing Violation**.  Failing to maintain proper sanitary condition in personal hygiene, toilets, housing, or dining areas.

D.  **Violation of Unit Rules**.  Failing to abide by a published unit rule.

15.  **Performance Failure Citation**.  An inmate assigned to Community Release may be issued a Performance Failure Citation (PFC), CN 9501, at the discretion of a Community Enforcement staff member in consultation with the shift supervisor or higher authority, for failure to comply with any condition of release. A copy shall be given to the inmate, and the inmate shall be afforded an opportunity to contest the factual accuracy of the Citation in writing to the Community Enforcement Unit Administrator.  No administrative action other than reprimand, additional supervision through incremental sanctions of the Community Release Intervention Program as enumerated in AD 9.2, Inmate Classification or additional program requirements may result from a Citation.  Following disposition, the original shall be included in the inmate's unit file.  If an inmate refuses to accept the Citation, a Disciplinary Report shall be issued on the charge of Violation of Program Provisions and the inmate shall be remanded to custody.

16.  **Disciplinary Coordinator**.  Each Facility Administrator shall appoint a managerial employee as a Disciplinary Coordinator who shall coordinate the disciplinary functions of the facility and who shall ensure that the facility complies with the policies and procedures of the Code.  The Disciplinary Coordinator shall be responsible for the processing and distribution of all records and reports under this Code unless responsibility is expressly delegated to another.

In addition to the administrative duties, the Disciplinary Coordinator shall have authority to: (1) substitute a charge on a Disciplinary Report in accordance with the provisions of Section 32 of the Code; (2) defer prosecution of a Disciplinary Report in accordance with the provisions of Section 33 of the Code; and (3) dismiss a Disciplinary Report, prior to hearing, that does not serve the disciplinary interests of the facility.  If a Disciplinary Report is deferred, dismissed or the charge substituted under this Section, the Disciplinary Coordinator shall send a copy of the Report and a memorandum of explanation to the reporting employee and the Unit Administrator, which the Unit Administrator shall retain on file a minimum of six (6) months.  A back up Disciplinary Coordinator shall be appointed by each Unit Administrator to act in the absence of the Disciplinary Coordinator. Each Community Services Unit Administrator shall also appoint a Disciplinary Coordinator in accordance with this Section.

17.  **Informal Disposition**.  Violations of rules and regulations may be disposed through Informal Disposition when Informal Disposition is deemed sufficient to regulate an inmate's behavior.

A.  **Initiation**.  Informal Disposition may be initiated (1) by the Reporting Employee or (2) by a Shift Commander or Unit Manager as an alternative to a Disciplinary Report.

1.  When initiated by the Reporting Employee the Informal Disposition Report Form, CN 9502, shall be completed, including the recommended penalty(s), and shall be appropriately signed. The completed form shall be received by the Shift Commander or Unit Manager not later than eight (8) hours from the alleged misconduct.

2.  When a Shift Commander or Unit Manager initiates Informal Disposition based on a disciplinary report, they shall prepare form CN 9502 and inform the Reporting Employee of the action.

B.  <u>Review</u>.  Not later than 24 hours of receipt of an Informal Disposition initiated by the reporting staff member, the Shift Commander or Unit Manager shall: (1) deny use of Informal Disposition; (2) approve Informal Disposition and the recommended penalty(s); or (3) approve Informal Disposition and impose an alternative penalty(s).  The reporting employee may confine an inmate to quarters pending review of the informal disposition.  In such case an incident report shall be completed, an entry made in the Station Log, and the Shift Commander or Unit Manager notified immediately.  The Shift Commander, Unit Manager or higher authority may intervene in this placement.

C.  <u>Disposition</u>.  Penalties shall be consistent with Section 10(D) of the Code with the exception of restitution, which shall not be authorized under Informal Disposition.  No more than three (3) penalties may be imposed and the duration of any penalty imposed shall not exceed one (1) week.

D.  <u>Notification</u>.  Upon completion of review by the Shift Commander or Unit Manager, the inmate and the Reporting Employee shall be notified of the Informal Disposition.  Notification to the inmate shall include a space for the inmate to sign acknowledging of the disposition.

E.  <u>Refusal</u>.  If the acknowledgment of Informal Disposition is not signed it shall constitute a refusal and a Disciplinary Report shall be initiated.

F.  <u>Records and Reporting</u>.  No record of an Informal Disposition shall be kept in an inmate's Master File or automated file.  A record of all Informal Dispositions shall be maintained at the unit to allow for record keeping and reporting under Section 41.

18.  <u>Initiation of Disciplinary Report</u>.  A Disciplinary Report Form, CN 9503, shall be prepared by a staff member, the Reporting Employee, upon detection of an act which gives cause for formal disciplinary action.  A separate Disciplinary Report shall be prepared for each offense charged.  Only the most serious possible charge relating to an offense shall be charged to a single act. When additional charges are justified as a result of sequential behaviors during an incident charges may be filed separately.

A.  <u>Facility Procedure</u>.  The Disciplinary Report shall be delivered to a Custody Supervisor or Unit Manager. Provision shall be made to provide the Reporting Employee, upon request, with a copy of page one of the Disciplinary Report before the end of the shift.

ExhibiT   _James McKee_

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF | |
|---|---|---|---|
| 9.5 | March 5, 2003 | 12 | 19 |
| TITLE | Code of Penal Discipline | | |

B. <u>Community Release Procedure</u>. The Disciplinary Report shall be referred to the appropriate Unit Administrator or managerial designee.

19. <u>Custody Supervisor/Unit Manager</u>. A Custody Supervisor or Unit Manager shall be responsible to:

    A.    Manage disciplinary functions during the shift.

    B.    Review the Disciplinary Report to ensure that it is complete and that, on its face, the evidence supports the charge.

    C.    Sign the report.

    D.    Initiate delivery of the Report to the accused and forward the original copy to the Disciplinary Investigator.

20. <u>Administrative Detention</u>. The Shift Commander may remove an inmate from population, in accordance with Administrative Directive 9.4, Restrictive Status, pending a disciplinary disposition when justified for reasons of security or order. If an inmate is removed from population, the Unit Administrator shall review the case within 72 hours of placement in Administrative Detention to determine whether continued confinement in the status is necessary. The date and time of placement in Administrative Detention shall be recorded on the Disciplinary Report. If punitive segregation is subsequently imposed any time spent in Administrative Detention shall be credited toward the sentence on a day-for-day basis.

21. <u>Notice of Disciplinary Proceedings</u>. A complete and legible copy of the Disciplinary Report shall be delivered to the inmate within 24 hours of the discovery of the inmate's alleged misconduct.

22. <u>Disciplinary Investigator</u>. Upon receipt of a disciplinary report, the Investigator shall assign a report number in accordance with Section 41 of the Code. An Investigator shall conduct investigations into the allegations of misconduct of each Disciplinary Report that goes to hearing and shall have authority to dispose a Disciplinary Report prior to the hearing pursuant to Section 23 of the Code. Investigators shall be appointed by the Unit Administrator and must be certified by the Center for Training and Staff Development prior to assuming their duties.

23. <u>Disciplinary Investigator Disposition</u>. The Investigator shall interview the accused inmate. If the inmate chooses to plead guilty prior to a Disciplinary Hearing, the Investigator may accept the plea and dispose the Disciplinary Report unless the inmate has been charged with Assault on a Department of Correction Employee, Creating a Disturbance, Escape, Felonious Misconduct, Hostage Holding of a Department of Correction Employee or Riot, or Security Risk Group Safety Threat. If the Investigator elects to dispose the Disciplinary Report, the Investigator shall impose sanctions consistent with Section 10 of this Code up to half the maximum allowed under Sections 10(B) and 10(C). If the Investigator disposes the Disciplinary Report, no appeal shall be permitted. Before accepting a guilty plea, the Investigator shall ensure that the inmate understands that a guilty plea precludes an appeal. The inmate must sign the statement on the Disciplinary Report

that a guilty plea is made voluntarily and with the knowledge that no appeal is permitted. A Disciplinary Process Summary, CN 9504, shall be prepared by the Investigator when an inmate pleads guilty pursuant to this section. Investigator dispositions shall be consistent with the Unit's disciplinary policy and interests.

24. **Pre-hearing Investigation**. If the Investigator does not dispose the Disciplinary Report, the Investigator shall inform the inmate about the process of investigation and hearing and ensure the inmate receives a copy of the Disciplinary Report at least 24 hours prior to any Disciplinary Hearing. The Investigator shall determine if the accused inmate desires an Advocate and shall inform the inmate of the available Advocates. The Investigator shall indicate the inmate's decision on the Disciplinary Investigator Report, CN 9505, and if an Advocate is selected, shall promptly notify the Advocate. The Disciplinary Investigator shall determine if the accused inmate desires a witness(es) and shall list the name and number of each appropriate inmate witness and the name and position of any staff witness. If an inmate declines an Advocate or identifies no witnesses, the decision(s) shall be recorded on the Disciplinary Investigator Report, which must be signed by the inmate. Any failure to obtain signatures shall be for good cause as determined by the Hearing Officer and documented on the Disciplinary Process Summary. The Investigator shall conduct an investigation into the circumstances of each Disciplinary Report that goes to hearing and gather all information deemed relevant to the Disciplinary Report. The investigation shall be initiated within the next business day following the time the Disciplinary Report is issued. The Investigator shall report the results of the investigation on the Disciplinary Investigation Report.

The Investigator shall prepare a hearing docket and ensure that a Report is brought to hearing in accordance with the time frames established in Section 31(A) of the Code and shall ensure that the inmate, any witnesses, the Advocate and evidence along with appropriate forms are available at the scheduled hearing.

25. **Advocate**. An Advocate shall meet with the inmate at least 24 hours prior to the hearing, conduct a thorough investigation independently of the Investigator, and make a report of the investigation using the Advocate Investigation Report CN 9509. The Advocate shall assist the inmate in preparing a defense, and appear at and assist in making a presentation at a formal disciplinary hearing. If the advocate selected cannot appear at the hearing, another Advocate may be appointed to assist the inmate. The accused inmate may, in writing, withdraw a request for an Advocate at the time of the hearing.
Each Unit Administrator shall appoint a minimum of three (3) staff members, including both custodial and treatment personnel, to serve as Advocates. The names of the Advocates shall be made known to all staff and inmates through appropriate notice.

26. **Defense Preparation**. An accused inmate shall be allowed a minimum of 24 hours, from notice to hearing, to prepare a defense.

Exhibit James McK___

| TITLE | |
|---|---|
| | Code of Penal Discipline |

     A.    **Waiver**. An inmate may waive the 24-hour period by executing a written waiver.

     B.    **Exception**. When an inmate's release is imminent or a transfer is necessitated, an expedited disposition may be conducted in accordance with Section 29 of the Code, which may cause the 24-hour period to be constricted.

27.   **Witnesses**. An accused inmate shall have an opportunity to present witness testimony at a disciplinary hearing. Witness testimony must be truthful, relevant, freely given and not redundant. To appear at a disciplinary hearing, an individual must be present at the unit and pose no threat to an orderly disciplinary hearing or to personal safety. If an otherwise qualified witness is unable to appear, written testimony may be submitted.

     A.    **Identification**. The Investigator shall ascertain whether the inmate wants to call witnesses. If so, the Investigator shall record the names on the Disciplinary Investigation Report. The inmate's failure to identify witnesses to the Investigator shall make any subsequent request for a witness subject to the Hearing Officer's discretion.

     B.    **Testimony**. The Investigator shall interview prospective witnesses; list the witnesses and the nature of the testimony on the Disciplinary Investigation Report; and schedule the admissible witnesses for the disciplinary hearing. No inmate witness shall be compelled to testify. The inmate shall be responsible for providing written testimony for any community witnesses.

     C.    **Staff Witness**. A staff member, called upon for testimony, shall submit such testimony in writing or in person at the discretion of Hearing Officer.

28.   **Hearing Officer**. A Hearing Officer shall preside over any formal disciplinary hearing, serve as the trier of fact, and adjudicate any referred Disciplinary Report. Hearing Officers and acting Hearing Officers shall be certified by the Center for Training and Staff Development prior to assuming duty. The Hearing Officer shall have authority to include any person as a witness, may limit the testimony of any witness, which is redundant or irrelevant and may order the presentation of any documents or evidence necessary for the conduct of a disciplinary hearing. The Hearing Officer may exclude or eject from the disciplinary hearing any person whose behavior poses a threat to an orderly hearing or jeopardizes the safety of any person. The Hearing Officer shall determine the hearing requirements to ensure a professional proceeding.

29.   **Expedited Disposition**. The disciplinary process may be expedited when an accused inmate's release is imminent or when circumstances require that the inmate be urgently transferred and it is impracticable to conduct a hearing at the receiving facility. In such case, an inmate must receive the Disciplinary Report, must be afforded a chance to prepare a defense including nominating witnesses, must receive the services of an Advocate if desired, and any hearing must be in accordance with Section 31 of the Code.

| DIRECTIVE NO. 9.5 | EFFECTIVE DATE March 5, 2003 | PAGE 15 | OF 19 |
| --- | --- | --- | --- |
| TITLE | Code of Penal Discipline | | |

Case 3:03-cv-00071-JGM   Document 42-1   Filed 06/22/2004   Page 15 of 30

30. **Transferred Inmate's Disciplinary Process**. If an inmate is transferred prior to disposition of a Disciplinary Report, the Report shall be disposed at the receiving unit. The Disciplinary Coordinators of the sending and receiving unit shall coordinate the process. The receiving unit shall pick up the process at the point where the sending unit left off and assume all duties for disposing the Report except the investigation. A copy of the Disciplinary Report shall be delivered to the inmate at the time of transfer if it has been reviewed in accordance with Section 19 and the Report shall be sent with the inmate. If the Report is not sent with the inmate, the sending unit shall be responsible for notifying the receiving unit by telecommunications that a Report is pending and for expeditiously forwarding the Report. The sending unit shall conduct an investigation, shall inform the receiving unit of the results of its investigation and of what procedural steps have been taken and shall respond to all inquires from the receiving unit or the Hearing Officer. The inmate may select an Advocate at the receiving unit and the receiving unit may request an investigation by an Advocate of the sending unit.

Interviews may be conducted by telephone including the taking of testimony for the disciplinary hearing.

31. **Hearing**.

    A.   **Time Frames**. A disciplinary hearing shall be convened as soon as possible but not later than seven (7) business days of the date of the Disciplinary Report except in the event of a transfer a hearing shall be convened within 10 days business days.

    B.   **Appearance of the Accused**. An accused inmate shall be present at the disciplinary hearing: (1) unless the inmate declines to appear; (2) unless the inmate's behavior gives cause for exclusion or removal; and (3) except when confidential information is presented as described in subsection (G) below. The absence of the accused inmate shall be documented on the Disciplinary Process Summary. The Hearing Officer may recess the hearing for deliberation outside the presence of the inmate.

    C.   **Continuance**. For good cause shown, a disciplinary hearing may be continued to a later hearing date not to exceed 10 business days. The Hearing Officer shall record the reason for any continuance on the Disciplinary Process Summary. Not more than two (2) continuances may be granted to the Investigator or the accused for any Report.

    D.   **Plea**. The charge as it appears on the Disciplinary Report shall be read and the inmate shall be asked to plea. If the inmate desires to plead guilty to the charge, the inmate shall so state. A plea of not guilty shall be entered by the Hearing Officer if the inmate refuses to plead or is not present. Before accepting a guilty plea, the Hearing Officer shall ensure that the inmate understands that a guilty plea precludes an appeal. The inmate must sign a statement on the Disciplinary Report that the guilty plea is made voluntarily and with the knowledge that no appeal is permitted. If the inmate is unable to sign the report the Hearing Officer shall make an appropriate notation including the reasons for the inmate's inability to sign.

Exhibit T _James McK_

| DIRECTIVE NO. 9.5 | EFFECTIVE DATE March 5, 2003 | PAGE OF 16    19 |
|---|---|---|
| TITLE | Code of Penal Discipline | |

E.  <u>Evidence</u>.  Evidence may be physical evidence, a written statement or a document, or oral testimony.  A copy or listing of any physical evidence shall be given or made available to the inmate or the inmate's Advocate by the Investigator at least 24 hours prior to the hearing.

Physical evidence shall be presented at the hearing, as determined by the Investigator, whenever practicable.  Otherwise, a sample, photograph, laboratory test, or a written description of the evidence shall be presented.

F.  <u>Presentation of the Case</u>.  An Investigator shall present the case against the inmate.  The Investigator presenting the case need not be the Investigator who conducted the investigation.  The Investigator shall read the Statement of Charge on the Disciplinary Report, explain the results of the investigation and submit a written investigative report.  If the inmate is found guilty the Investigator shall present the Unit recommendation for sanction and reasons for them in the presence of the accused.  The Investigator shall respond to questions from the Hearing Officer.

G.  <u>Confidential Information</u>.  Information which is material to the allegation of misconduct may be exempted from disclosure if it places another person in jeopardy or compromises the unit's security.  If the Investigator believes that documentary or testimonial information should be exempted from disclosure, the Investigator shall present the information and an assessment of its credibility to the Hearing Officer outside the presence of the inmate and the inmate's Advocate.  The Hearing Officer shall decide if the information should be exempt from disclosure and, if so, shall inform the inmate that there is exempted information.  If the inmate is found guilty of the offense, the Hearing Officer shall state, in writing, a summary of the information, an assessment of its reliability and why it was exempted.  This statement shall be maintained in a file, which is not accessible to any inmate.  If the Hearing Officer determines information is not confidential, the Hearing Officer may proceed with the hearing or may continue the hearing to permit the inmate time to prepare a defense.

H.  <u>Rebuttal</u>.  The accused inmate or the Advocate may be allowed to question witnesses or to rebut evidence and information presented at the disciplinary hearing subject to constraints imposed by the Hearing Officer.  The Hearing Officer shall constrain the rebuttal if it is irrelevant, redundant, or disrupts an orderly hearing.

I.  <u>Defense</u>.  The inmate shall be given an opportunity to present the inmate's version of the offense, orally and/or in writing.  The inmate shall be given an opportunity to present witness testimony subject to the provisions of Section 27 of the Code.  Witnesses may be questioned by the Hearing Officer.  Defense information shall be recorded on the Disciplinary Process Summary.

32.  <u>Substitute Charge</u>.  A charge may be substituted if it becomes apparent that the original charge was inappropriate.

| DIRECTIVE NO. | EFFECTIVE DATE | | PAGE OF |
|---|---|---|---|
| | March 5, 2003 | | 17 19 |
| TITLE | | | |
| | Code of Penal Discipline | | |

Case 3:03-cv-00071-JGM    Document 22    Filed 06/22/2004    Page 17 of 30

A.  **During Prehearing Investigation**.  A Disciplinary Coordinator may substitute a charge during prehearing investigation by altering the original Disciplinary Report and initialing it.  A copy of the Report containing the substituted charge shall be delivered to the inmate at least 24 hours prior to a hearing.

B.  **During Hearing**.  A Hearing Officer may substitute a charge during hearing by informing the inmate of the substitute charge and taking a plea.  A substitute charge renders the original charge dismissed.  If the inmate pleads not guilty to the substituted charge, a continuance may be granted upon request of either the Investigator or the accused inmate to allow for further investigation or for defense preparation.

33.  **Deferred Prosecution**.  A Class A Disciplinary Report shall not be deferred.  The Disciplinary Coordinator or the Hearing Officer may defer prosecution of a Class B or C Disciplinary Report for up to 60 days when the inmate's disciplinary record has been positive and the alleged offense appears to be incidental. If during the 60 day period, the inmate commits a classified disciplinary offense, the deferred Report shall be processed to disposition.  Only one (1) charge may be deferred in any 60 day period, no record shall be maintained of the Report. Deferred prosecution authorized by the Disciplinary Coordinator shall be noted on the Disciplinary Report, signed and dated, and countersigned by the inmate.  Any inmate who refuses to work during an inmate disturbance or inmate work stoppage, and has been issued a Disciplinary Report for Disobeying a Direct Order, shall not have the Disciplinary Report deferred.

34.  **Self-Defense**.  A decision that the inmate acted in self-defense may mitigate the severity of the sanction(s) imposed.

35.  **Decision**.  The Hearing Officer shall decide the case on the basis of the hearing record.  A finding of guilty shall be based on evidence that the accused inmate committed the offense.  The Hearing Officer shall immediately report the decision orally to the inmate and, if guilty, the sanction imposed.

36.  **Disciplinary Process Summary**.  The Hearing Officer shall produce the Disciplinary Process Summary Form, CN 9504, within 24 hours of the hearing excluding weekends and holidays.  When a Disciplinary Report has been disposed by an Investigator in accordance with Section 23 of the Code, the Disciplinary Investigator shall complete the Disciplinary Process Summary Form.  The Summary shall include the offense charged, the plea of the accused inmate, the disposition of witnesses, a summary of witness testimony, the finding and the reasons for it, the sanction(s) imposed and the reasons for it and any other noteworthy information about the hearing.  A copy shall be forwarded to the Unit Administrator.  A copy of this Summary shall be provided to the Investigator, the Reporting Employee and the inmate.  Any testimony, which might jeopardize an inmate's safety, shall not be disclosed.

Exhibit James McK

Case 3:03-cv-00071-JGM    Document 42-2    Filed 06/22/2004    Page 18 of 30

37. <u>Review by Unit Administrator</u>.  The Unit Administrator shall receive a copy of the Disciplinary Process Summary within two (2) business days of the disposition of the Disciplinary Report.  With the exception of Section 39 below, the Unit Administrator shall not modify the finding or the formal record but may discontinue any punishment imposed if additional punishment serves no correctional purposes or for administrative reasons.

38. <u>Parole</u>.  Any inmate that has been voted to Parole and is convicted of a Class A or B disciplinary offense shall be referred to the Parole Board Chairman for reconsideration.

39. <u>Appeals</u>.  An inmate may appeal a disciplinary action by completing the Disciplinary Hearing Appeal form CN 9507.  Each unit shall provide Disciplinary Hearing Appeal forms, and a mail box clearly marked "Disciplinary Appeals", for inmates to submit a disciplinary appeal. The Disciplinary Coordinator shall remove and immediately forward all appeals, along with any other appropriate documents used in the adjudication of the Disciplinary Report, to the Unit Administrator at the facility where the disciplinary report was adjudicated, who shall not delegate the authority to respond to disciplinary appeals. Disciplinary action resulting from a guilty plea shall not be subject to an appeal.  The appeal must be submitted within 15 days of the receipt of the Disciplinary Process Summary by the inmate.  The appropriate Unit Administrator shall respond to any appeal within 30 business days of the receipt of the appeal.

The appellate authority may alter disciplinary action in any way that serves the State's correctional objectives.  The action of the Unit Administrator shall be final and not subject to further appeal.

40. <u>Logbooks and Disciplinary Report Numbering System</u>.  Each Disciplinary Report submitted for disposition shall be numbered using the originating unit's initials; followed by a two (2) digit number signifying the present year; followed by a two (2) digit number signifying the present month; followed by the sequential number in which the report was submitted starting with the number one (1) for each new month.  The Disciplinary Report shall be recorded in a disciplinary logbook upon submission to the Custody Supervisor or Unit Manager, in accordance with the Disciplinary Report Logsheet, CN 9510.

41. <u>Records</u>.  The original of a Disciplinary Report and a copy of the Disciplinary Process Summary, the Advocate Report and the Investigators Report shall be maintained in the inmate's Master File, for the exception of not guilty, reversal upon appeal and informal dispositions. These reports shall not be maintained in the inmate's master file, but may be maintained at the facility for statistical purposes. Information shall include findings of guilty or dismissed. Statistical information shall be included in the weekly disciplinary summary prepared by the Research and Information Systems Unit.  Confidential testimony, which might jeopardize the safety of any person or the security of the unit, shall not be placed in the inmate's Master File.  The Unit Administrator shall submit the Disciplinary Summary, CN 9508 as part of their monthly report.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
| --- | --- | --- |
| 9.5 | March 5, 2003 | 19    19 |

| TITLE | |
| --- | --- |
| | Code of Penal Discipline |

42. **Process Failure.** A serious process failure may result in dismissal by the Hearing Officer or the appellate. Technical mistakes in the disciplinary process, including minor discrepancies in meeting time frames, shall not be cause for the reversal or dismissal of a Disciplinary Report.

43. **Exceptions.** Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

Exhibit *Janet McKee*



# Citation for Performance Failure
## Connecticut Department of Correction

CN 9501
Rev 3/14/01

| Site | | Report no. | | Report date | | |
|---|---|---|---|---|---|---|
| Inmate name | | | | ID no. | | |
| Performance failure location | | | Date | Time | ☐ a.m. | ☐ p.m. |
| Type of failure | | | | | | |

**Staff statement:**




**Witness(es):**




**Evidence:**




**Inmate interview:**




**Disposition:**




| Prepared by | Title | | |
|---|---|---|---|
| Citation delivery date | Time | ☐ a.m. | ☐ p.m. |
| Inmate receipt | | | |
| Delivery officer | Title | | |
| Reviewed by | Title | | |

ExhibiT    *James McKinn* (signature)



# Informal Disposition Report
## Connecticut Department of Correction

CN 9502
REV 7/2/02

| Unit | | Report date |
|---|---|---|
| Inmate name | Inmate no. | Housing |
| Incident location | Date | Time ☐ a.m. ☐ p.m. |

**Description of misconduct:**

**Penalties (no more than three):**          **Duration (not ore than one week):**

☐  Reprimand

☐  Loss of recreation                              ☐  Days

☐  Loss of phone privileges                   ☐  Days

☐  Loss of commissary privileges          ☐  Days

☐  Loss/modification of social visiting    ☐  Days

☐  Extra duty                                           ☐  Days

☐  Confinement to quarters                    ☐  Days

☐  Loss  of social correspondence         ☐  Days

**Stipulations:**

| Staff signature | Title |
|---|---|

## SHIFT COMMANDER / UNIT MANAGER REVIEW

☐  I approve this informal disposition

☐  I approve informal disposition with penalties as stated below

☐  I disapprove informal disposition

**Penalties:  (1)                          (2)                          (3)**

| Shift commander / unit manager signature | Date |
|---|---|

## INMATE ACKNOWLEDGMENT

**I hereby accept informal disposition for the disciplinary violation described above.**

**(Note:  failure to sign shall constitute a refusal and a disciplinary report shall be issued)**

| Inmate signature | Date |
|---|---|

Exhibit James McK

# Disciplinary Report – Page 1
## Connecticut Department of Correction

CN 9503
REV 7/3/02

| Unit | Report date | Report no. |
|---|---|---|
| Inmate name | Inmate no. | Housing |
| Location | Incident date | Time ☐ a.m. ☐ p.m. |
| Charge | | Class |

**Description of violation:**

**Witness(es):**

**Physical evidence:**

| Reporting employee | | Employee requests copy ☐ yes ☐ no |
|---|---|---|
| Title | Date | Time ☐ a.m. ☐ p.m. |

## CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

| ☐ Administrative detention | Date | Time ☐ a.m. ☐ p.m. |
|---|---|---|
| ☐ Accused inmate interview | ☐ Informal disposition | |
| Custody supervisor / unit manager signature | | |
| Title | Date | Time ☐ a.m. ☐ p.m. |

## INMATE NOTICE

| Delivered by | | |
|---|---|---|
| Title | Date | Time ☐ a.m. ☐ p.m. |

Exhibit  *James McK___*

# Disciplinary Process Summary Report – Page 1
## Connecticut Department of Correction

CN 9504
REV 3/9/01

| Unit | Report no. | Report date | Hearing date |
|---|---|---|---|

| Inmate name | ID no. | Housing |
|---|---|---|

| Reporting employee | Title |
|---|---|

| Investigator | Advocate |
|---|---|

| Inmate appearance ☐ yes ☐ no | Reason |
|---|---|

☐ Suspended sentence

| ☐ Deferred prosecution | No. of days | Through |
|---|---|---|

| ☐ Charge dismissed | By | Reason |
|---|---|---|

Continuances (dates and reasons):

## SUMMARY

|  | Charge/class | Plea | Finding | Sanctions |
|---|---|---|---|---|
| Original |  |  |  |  |
| Substitute |  |  |  |  |

☐ Confidential information          Reliability

Documentation submitted:    ☐ Incident report    ☐ Medical incident report
☐ Use of force report    ☐ Other (specify)

| Witness name | ☐ appearance |
|---|---|

Testimony:

| Witness name | ☐ appearance |
|---|---|

Testimony:

| Witness name | ☐ appearance |
|---|---|

Testimony:

| ☐ Witness exclusion    Name | Reason |
|---|---|

Physical evidence, written testimony:

Exhibit Jams McL

# Disciplinary Investigation Report – Page 1
## Connecticut Department of Correction

CN 9505
Rev 4/1/02

| Unit | | |
|---|---|---|
| | Report no. | Report date |
| Inmate name | Inmate no. | Housing |
| Investigator | | |

| Advocate | Date advocate notified |
|---|---|

| ☐ Advocate refused | Inmate signature |
|---|---|

## ACCUSED INMATE INTERVIEW

Inmate informed of process of investigation and hearing    ☐ yes    ☐ no

Inmate's version of incident:

## INMATE WITNESS REQUEST

Inmate requests witness(es)    ☐ yes    ☐ no

If no, inmate signature

Witness name

Nature of testimony:

Witness name

Nature of testimony:

Witness name

Nature of testimony:

*ExhibiT*    *James McK[illegible]*

# Disciplinary Supplemental Information
## Connecticut Department of Correction

CN 9506
Rev 3/5/03

Addendum to: ☐ Disciplinary report      ☐ Disciplinary process summary

☐ Disciplinary investigation report   ☐ Page (specify)

Section

Inmate name

| Unit | Report no. |
|---|---|
| Report  date | Time       ☐ am    ☐ pm |

Text (continued):

Signature

| Title | Date |
|---|---|

*ExhibiT James McKu*



# Disciplinary Hearing Appeal – Page 1
### Connecticut Department of Correction

CN 9507
REV 7/2/02

You have been found guilty of a disciplinary offense and have received sanctions.  You may appeal the hearing officer's decision by filling out both pages of this form  -  PLEASE PRINT  -  and by placing it in the facility disciplinary appeal mail box.  Please include copies pages 1 and 2 of the disciplinary report and pages 1 and 2 of the disciplinary process summary report (decision).

| Inmate name | Inmate no. | Date |
|---|---|---|
| Facility | Charge | Report Date |
| Date hearing completed | Facility | |

**Sanctions imposed:**

**Date you received your copy of the report**

**Date you saw the disciplinary investigator**

**Did you see an advocate** ☐ yes ☐ no

**If yes, name of advocate**

**Date you saw the advocate**

**Was the advocate one of a list of choices** ☐ yes ☐ no

**Did you identify witness(es) to the investigator** ☐ yes ☐ no

**If yes, name(s) of witness(es):**

**Did your witness(es) testify in person** ☐ yes ☐ no

**If no, what was (were) the reason(s) given:**

**Did the hearing officer hear your side of the case** ☐ yes ☐ no

**If no, why not:**

**Describe what you told the hearing officer:**

Exhibit  James McK



# Disciplinary Summary
### Connecticut Department of Correction

CN 9508
REV 2/28/03

| Unit | Date |
|---|---|

| FORMAL DISCIPLINARY REPORTS (DRs) | | Number |
|---|---|---|
| 1.  Guilty plea or finding  -  sanction imposed | Investigator | |
| | Hearing officer | |
| 2.  Guilty plea or finding  -  sanction imposed | Investigator | |
| | Hearing officer | |
| 3.  Not guilty finding | Investigator | |
| | Hearing officer | |
| 4.  Deferred prosecution | Disciplinary coordinator | |
| | Hearing officer | |
| 5.  Charge dismissed | Disciplinary coordinator | |
| | Hearing officer | |
| 6.  Charge substituted  -  lower charge | Disciplinary coordinator | |
| | Hearing officer | |
| 7.  Charge substituted  -  higher charge | Disciplinary coordinator | |
| | Hearing officer | |
| 8.  Continuances | Hearing officer | |
| 9.  Punishment discontinued | Unit administrator | |
| 10.  DR not accepted  -  informal issued | Unit manager or shift commander | |
| | Total DRs imposed | |

| INFORMAL DISPOSITIONS | | Number |
|---|---|---|
| Shift commander or unit manager | Approved as written | |
| | Approved with modification | |
| | Disapproved | |
| | Disapproved  -  DR issued | |
| | Issued as alternative to a DR | |
| | Total informal reports | |

ExhibiT  *James McK*

# Advocate Investigation Report – Page 1
## Connecticut Department of Correction

CN 9509
REV 8/1/02

| Inmate name | | Inmate no. |
|---|---|---|
| Disciplinary report no. | | Report date |
| Advocate | Offense | |

| Date and time investigation initiated | Time | ☐ a.m.  ☐ p.m. |

## ACCUSED INMATE INTERVIEW

With my signature I acknowledge that I have met with my advocate.

| Inmate signature | Date |
|---|---|

Exhibit

CN 9510
Rev 3/5/03

# Disciplinary Report Logsheet
## Connecticut Department of Correction

| Report no. | Inmate name | Inmate no. | Offense | Class of offense | Date of offense | Date of final disposition | Inmate plea | Investigator | Disposition | | | Sanction |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | | Coordinator | Hearing officer | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

Exhibit  *[signature]*

## G. REQUEST FOR RELIEF

I request the following relief:

Liability
Declaratory Judgments And Injunctive relief;
Compensatory Damages; Punitive Damages
Order Restraining Order To not be placed
back in Garner Correctional Institution

$ 20 1000 Joint and
Severly For Emotional Distrees against
defendant's for 8 Mramendment John Lahda
Violation And Department of Correction

## H. JURY DEMAND

Do you wish to have a jury trial? Yes ___✓___   No_____

_James Lee McKim_
Original signature of attorney (if any)

_James Lee McKim_
**Plaintiff's Original Signature**

_____
_____
_____
Attorney's full address and telephone

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _MacDougall Correctional 1153 East Street South_ on _May 28, 2004_
(location) _Suffield ConnecTicut 06080_   (date)

_James Lee McKim_
**Plaintiff's Original Signature**

7