# United States District Court
# District of Conneticut

**FILED** 2004 OCT -4 P 5:08
U.S. DISTRICT COURT

James McKinnon   Civil no. 3:03CV71
VS.                    (JBA)(JGM)

Jose Delgado, ETAL
John LaHDa
Helen Dorsey
Sandi Orleman
Yolanda Zayas
Kunjathan ThanKappan
Aqil Hashim
        Bruono
        Kozikowski
        Frank

September 3, 2004

## Defendants Individual Capacity

Plaintiff motion is responding to court Ruling and Order Dated August 11, 2004, Support motion for Counsel; Respecfully plaintiff has Exhibit's of information for court describing the reason Department of Correction Inmate Legal Assistance Program is inadequate for the Assistance's of Counsel.

1. Plaintiff James McKinnon pro.se Respecfully move the court not to held me in same standards as an attorney; with a request for consideration in this obove captain case of material facts.

By James Lee McKinnon
James Lee McKinnon Prose
Corrigan Rodgowski
986, Norwich New London
Uncasvill Connecticut
06382

2. From University of Connecticut health Center of psychiatry Dr. Robert Tresman sent my information out of my medical records to Attorney Jane Starkowski at inmates Legal assistance Program by facsimile.

3. This was Identifying my mental health information a breach.

4. My privacy files that contain my Doe v. Meachum confidentiality information a breach I have not sign a release for information.

5. One day plaintiff was on the speker phone with attorney Starkowski and Attorney Jessica York managing is Starkowski, Jessica is staff Attorney.

6. Then plaintiff ask the person name that sent the information it was said Helen Dorsey the medical Boss in garner.

7. I sent a Inmate grievance to medical and she Helen Dorsey denied it saying the release is on the fax.

8. Then plaintiff ask inmate Legal Assistance again it was no identifying; after 30 day's plaintiff ask is attorney help that was not good, to send a copy of his file.

9. In the paper work was a fax cover to Attorney Jane Starkowski from University of Connecticut Dr, Robert Tresman ph, D

By: _James Lee McKinnon_
James Lee McKinnon, Prose
Corrigan Rodgowski
986, Norwich New London
Uncasvill Connecticut
06382

10. Plaintiff's have filed 1983 Civil rights Law Suit against the defendants to contend that the facts are so over wheming in support of the allegations which he forwarded in the interest of justice and expedience the fact that plaintiff is more likely to prosper.

11. Plaintiff James McKinnon is a citizen of United States who presently resides at Corrigan Rodgowski 986, Norwich New London Uncasville Connecticut 06382

12. Defendants are citizens of United States who presently resides at garner Correctional Institution 50 nunnawak Road newTown Connecticut 06410.

By /s/ James Lee McKinnon
James Lee McKinnon prose

Certification

I hereby certify that through this attachment that this claim to be true and to the best of my obility. on this 3Th Day of September, 2004.

Defendants Individual Capacity

Jose Delgado, ET AL
John LaHda
Helen Dorsey
Sandi Orleman
Yolanda Zayas
Kunjathan Thankappan
Aqil Hashim
        Bruono
        Kozikowski
        Frank

Plaintiff:
By /s/ James Lee McKinnon
James Lee McKinnon prose
Corrigan Rodgowski CI
986, Norwich New London Tpk
Uncasville Connecticut
                06382

# Exhibit

# Settlement

Exhibit JamME



# MEMORANDUM
### via fax transmission only
### (627-2206)

To:      Major Paul Bradnan
           MacDougall-Walker Correctional Institution
           1153 East Street South
           Suffield, CT  06080

From:    Lynn D. Wittenbrink
           Assistant Attorney General
           Office of the Attorney General
           110 Sherman Street
           Hartford, CT  06105

Re:      **James McKinnon vs. Robert Trestman, et al.**
           No. 3:02CV2305(WWE)(HBF)
           Inmate No. 100770

Date:     February 5, 2004

---

       Thanks so much for your help! Mr. McKinnon needs to sign in three (3) places. The first place needs a witness and the second place needs to be notarized. Please call me with any questions.

       For your convenience I have placed an * next to each place that needs a signature.

       Many thanks!!

*Lynn D. Wittenbrink*
Lynn D. Wittenbrink
Assistant Attorney General

LDW:lac

Enclosure

RICHARD BLUMENTHAL
ATTORNEY GENERAL

110 Sherman Street
Hartford, CT 06105

Telephone No.: (860) 808-5450
Fax No.: (860) 808-5591

Office of the Attorney General
## State of Connecticut

## TELEFAX COMMUNICATION

| | |
|---|---|
| Date: | February 4, 2004 |
| To: | Major Paul Bradnan<br>MacDougall-Walker Correctional Institution |
| Telefax No.: | 627-2206 |
| Number of Pages:<br>(including this) | 11 |
| From: | Lori Corraccio, Secretary for:<br>Lynn D. Wittenbrink, Assistant Attorney General |
| Telephone No.: | (860) 808-5450 |
| Telefax No.: | (860) 808-5591 |
| Information faxed by: | Lori Corraccio (860-808-5470) |
| RE: | **James McKinnon vs. Robert Trestman, et al.**<br>No. 3:02CV2305(WWE)(HBF)<br><br>Major Bradnan – Please see the attached memo, letter, Settlement Agreement, Release and Stipulation of Dismissal for Mr. McKinnon's signatures w/dates signed before witness and notary public.<br>Thanks – Lori ☺ |
| *NOTICE:* | *This telecopy transmission and any accompanying documents may contain confidential or privileged information. They are intended only for use by the individual or entity named on this transmission sheet. If you are not the intended recipient, you are not authorized to disclose, copy, distribute or use in any manner the contents of this information. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange retrieval of the faxed documents.* |

Exhibit *James McKin*

UNITED STATES DISTRICT COURT **FILED**

DISTRICT OF CONNECTICUT

2003 SEP -4 A 11: 25

US DISTRICT COURT
BRIDGEPORT CT

JAMES McKINNON

v.

ROBERT TRESTMAN[1]
HELEN DORSEY

: PRISONER
: CASE NO. 3:02CV2305(WWE)(HBF)

## MEMORANDUM OF DECISION

Plaintiff James McKinnon ("McKinnon") is an inmate currently confined at the Cheshire Correctional Institution in Cheshire, Connecticut. He brings this civil rights action pro se pursuant to 28 U.S.C. § 1915. McKinnon alleges that, while he was confined at Garner Correctional Institution in Newtown, Connecticut, the defendants violated his constitutional right to privacy by distributing medical information to Inmates' Legal Assistance Program without his authorization. He seeks damages and an order that he be transferred from Garner Correctional Institution. The defendants have moved to dismiss this case. In response, McKinnon has moved for summary judgment. For the reasons that follow, the defendants' motion to dismiss will be granted in part and denied in part and McKinnon's motions for summary judgment will be denied without prejudice.

I. Standard of Review

When considering a Rule 12(b) motion to dismiss, the court

---

[1]Defendant Trestman was incorrectly identified in the case caption as Robert Tresmann.

accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). The Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

II. Facts

The court accepts as true the following facts.[2]

---

[2] McKinnon has filed a document entitled "Amended Complaint." This document, however, merely attempts to provide evidence

2

On June 28, 2002, Stacey Anderson, an employee in the Department of Psychiatry at the University of Connecticut Health Center, sent to Attorney Jane Starkowski at Inmates' Legal Assistance Program by facsimile a copy of a letter defendant Dorsey had written to McKinnon. The cover sheet indicated that the facsimile was sent at defendant Trestman's request.

The letter, dated June 21, 2002, was in response to various letters McKinnon sent to defendant Dorsey. The letter indicated that McKinnon has "a documented psychiatric diagnosis" and that he consistently refused the medication Risperdal that had been prescribed for treatment of McKinnon's anger and paranoia. The letter also indicated that the temperature in McKinnon's prison unit was within requirements established in <u>Doe v. Meachum</u> for confinement of HIV+ inmates. Defendant Dorsey suggested that McKinnon address his complaints of being cold with Dr. O'Halloran. Copies of the letter were sent to various doctors and nurses as well as to Major Lahda of the Department of Correction.

On July 9, 2002, an attorney at Inmates' Legal Assistance Program wrote to McKinnon. She indicated that he had sent eighteen pieces of correspondence to the office in April, May and

---

supporting the claims included in the original complaint and demonstrating that he exhausted his administrative remedies with regard to his claims. Because this document is not a true amended complaint, the court takes the facts from the original complaint and the documents attached to the purported amended complaint.

3

June 2002. In April 2002, McKinnon met with an investigator from Inmates' Legal Assistance Program and gave him three envelopes of additional documents. The attorney also referenced receipt of a facsimile copy of the letter. The same day, in a phone call to Inmates' Legal Assistance Program Attorney Jessica York, McKinnon informed Attorney York that he had not signed a release for the letter and asked her to send him a copy of the facsimile.

In response to an inmate grievance submitted in July 2002, defendant Dorsey stated that she did not send by facsimile a copy of her letter to Inmates' Legal Assistance Program.

In October 2002, McKinnon submitted an inmate request and filed a level 1 grievance asking why his medical information had been released to Inmates' Legal Assistance Program on June 28, 2002, and seeking the name of the person who released the information as well as a copy of his authorization for the release. The grievance was denied on November 19, 2002. The reviewer noted that McKinnon had signed two releases, one in January 2002 to provide information in conjunction with a request for legal representation and the other on July 23, 2002 to provide information to the Office of Protection and Advocacy.

III. Discussion

The defendants argue this case should be dismissed because McKinnon waived any privacy interest in the medical information contained in the released document, they are entitled to qualified immunity and any claim for injunctive relief has been

4

rendered moot by McKinnon's transfer to Cheshire Correctional Institution. McKinnon opposes the motion and has filed two motions for summary judgment.

A. <u>Motions for Summary Judgment</u>

As an initial matter, the court considers McKinnon's motions for summary judgment. Rule 56(a)1, D. Conn. L. Civ. R., provides: "There shall be annexed to a motion for summary judgment a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs a concise statement of each fact as to which the moving party contends there is no genuine issue to be tried."

McKinnon has not filed such a statement with either motion. Thus, the motions for summary judgment are denied without prejudice. Although the court cannot consider the exhibits attached to McKinnon's motions, it considers the arguments contained therein as supplemental opposition to the defendants' motion to dismiss.

B. <u>Motion to Dismiss</u>

The defendants seek dismissal of the claims for injunctive relief as moot. In addition, they contend that the McKinnon fails to state a claim upon which relief may be granted for denial of his right to privacy or, if the court were to determine that a viable claim existed, that they are protected by qualified immunity.

*Plaintiff* [handwritten]

5

1.  Claim for Injunctive Relief

In his complaint, McKinnon seeks transfer out of Garner Correctional Institution. McKinnon's papers indicate that he now is confined at Cheshire Correctional Institution. A claim is considered moot when the relief no longer is needed. See, e.g., Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that inmate's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit). Because McKinnon has been transferred, his request for that transfer is now moot. The defendants' motion to dismiss will be granted as to the request for injunctive relief.

2.  Violation of Right of Privacy

McKinnon alleges that the defendants violated his Fourth Amendment right of privacy in his medical records by sending by facsimile the letter written by defendant Dorsey to Inmates' Legal Assistance Program without his written authorization. In response, the defendants argue that McKinnon waived any right of privacy by commencing litigation regarding medical issues referenced in the letter.

Persons have a right to avoid disclosure of "personal matters" as a protected privacy interest. Whalen v. Rose, 429 U.S. 589, 599 (1977). The Second Circuit has extended this

6

protection to prisoners. See Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999) (holding that prison officials must maintain the confidentiality of previously undisclosed medical information unless disclosure is "reasonably related to legitimate penological interests"). One type of medical information protected from disclosure is HIV status. See Doe v. City of New York, 15 F.3d 264, 266-67 (2d Cir. 1994).

An inmate's right to privacy in his medical records is neither fundamental nor, as noted above, absolute. Prison officials may disclose inmate medical records when disclosure is reasonably related to a legitimate penological interest. See Powell, 175 F.3d at 112. In addition, an inmate may waive his privacy right through a variety of acts including written authorization and commencement of a lawsuit. See Whelan, 429 U.S. at 603-04. See also, e.g., Gowins v. Greiner, No. 01 CIV. 6933(GEL), 2002 WL 1770772, at *9 (S.D.N.Y. July 31, 2002) (holding that inmate's right of privacy in his medical records was not violated when treating physician included documentation from inmate's medical records in response to inmate grievance regarding medical care); Crawford v. Manion, No. 96 Civ. 1236(MBM), 1997 WL 148066, at *1 (S.D.N.Y. Mar. 31, 1997) (holding that release of inmate medical records to state assistant attorney general did not violate inmate's constitutional right to privacy because inmate had filed a suit against the state in which his health and medical records were at

7

issue). Thus, written authorization is not always required before inmate medical information may be disclosed.

The defendants state that Inmates' Legal Assistance Program was created to provide legal assistance to Connecticut inmates. Program attorneys are required to identify and research legal claims, provide legal advice and assist inmates in drafting legal papers including complaints, motions and memoranda. Although program attorneys do not represent the inmates, they are bound by the rules of professional responsibility including those rules regarding confidentiality of communications. See Connecticut Department of Correction Administrative Directive 10.3, www.doc.state.ct.us/ad/ch10. Defendants assume that McKinnon discussed his medical concerns with a program attorney, thus prompting the request for the letter written by defendant Dorsey. They argue that this discussion constitutes a waiver of McKinnon's right of confidentiality.

The court must confine its review to the complaint and attached documents, here the documents appended to the purported amended complaint. These documents reveal that McKinnon had sent eighteen pieces of correspondence to Inmates' Legal Assistance Program in the three months preceding this incident, and had given an investigator from Inmates' Legal Assistance Program envelopes containing other legal documents. There is no information regarding whether these documents referenced medical complaints or other concerns. The court notes that McKinnon

8

filed eleven cases in the district court. Although several cases reference medical concerns, no case was filed before November 2002, five months after the incident. Thus, there is no evidence in the complaint that McKinnon's correspondence or legal documents were related to litigation regarding his medical condition. Although defendant Dorsey's letter references medical complaints, the letter includes no facts indicating that McKinnon had commenced a lawsuit.

McKinnon also has provided a copy of an inmate grievance documenting his attempt to ascertain the identify of the person who sent the information to Inmates' Legal Assistance Program by facsimile in June 28, 2002. The grievance was denied because the reviewer could not verify McKinnon's claim. The reviewer noted that McKinnon had signed two releases for medical information, one to provide information to Dan Petiosky for legal representation in January 2002, and to provide information to the Office of Protection and Advocacy in July 2002. The reviewer also noted that "all health-related information that identifies a CDOC inmate is considered confidential" and, thus, she could not reveal to McKinnon any names contained in the information.

Based upon the complaint, McKinnon has provided evidence from which the court can infer that medical care providers were aware of the confidential nature of inmate medical information and the need for a signed release even for issues of possible representation, and that a University of Connecticut Health

9

Center employee provided information to Inmates' Legal Assistance Program at the direction of defendant Trestman without reference to a release. The complaint does not contain any evidence that the medical issues referenced in the letter were part of any litigation, either planned or filed and the court will not infer the existence of such litigation from the mere fact that McKinnon had been in communication with defendant Dorsey. Thus, the court cannot conclude that McKinnon would be unable to present evidence demonstrating that defendant Trestman violated his right to privacy of medical or health information. Defendant Trestman's motion to dismiss on the ground that McKinnon fails to state a claim upon which relief may be granted will be denied.

McKinnon alleges that defendant Dorsey disclosed his health information. The copy of the facsimile cover sheet, however, indicates that the facsimile was sent by Stacey Anderson at the request of defendant Trestman. In addition, in her response to McKinnon's July 20, 2002 inmate grievance, defendant Dorsey indicated that she neither copied Inmates' Legal Assistance on her original letter nor forwarded the information to them. The only evidence suggesting that defendant Dorsey was responsible is contained in the excerpt from the letter to McKinnon by an attorney at Inmates' Legal Assistance Program. The excerpt of letter, which is attached to the complaint and purported amended complaint, provides: "Furthermore, on June 28, 2002, ILAP received a copy of a letter addressed to you via facsimile from

10

HSA Helen Dorsey." This sentence is ambiguous. It may be read to mean that defendant Dorsey sent the facsimile or that Inmates' Legal Assistance Program received, via facsimile, a letter written by defendant Dorsey to McKinnon.

Based upon the clear evidence of the inmate grievance and the facsimile cover sheet, the court concludes that McKinnon will be unable to present evidence demonstrating that defendant Dorsey revealed confidential information to Inmates' Legal Assistance Program. Thus, defendant Dorsey's motion to dismiss will be granted.

### 3.  Qualified Immunity

Finally, the court must determine whether defendant Trestman is protected by qualified immunity.

The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).

11

> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id.

As discussed above, an inmate's right to privacy of personal health information, absent waiver or legitimate penological interest, was clearly established in Whalen v. Rose, 429 U.S. 589 (1977), Powell v. Schriver, 175 F.3d 107 (2d Cir. 1999) and Doe v. City of New York, 15 F.3d 264 (2d Cir. 1994). The court has determined above that, construing the allegations in the light most favorable to McKinnon, the pleadings could state a claim against defendant Trestman for violation of McKinnon's right to privacy. Department of Correction medical care providers were aware of the need for medical releases or authorizations before releasing inmate medical information and there is no evidence that McKinnon waived his right of privacy by commencing litigation regarding these medical issues or was planning such litigation with Inmates' Legal Assistance Program. Nevertheless, defendant Trestman directed that the letter, which referenced McKinnon's mental health diagnosis and medication and contained an inference that McKinnon was ███ by its reference to Doe v. Meachum, be sent to Inmates' Legal Assistance Program.

Based upon this information and McKinnon's clearly

12

established right to privacy, the court cannot conclude that a reasonable person in Defendant Trestman's position would have concluded that his actions did not violate McKinnon's rights. Thus, the motion to dismiss on the ground that defendant Trestman is protected by qualified immunity will be denied without prejudice. Defendant Trestman may revisit this issue on a more fully developed record.

IV. Conclusion

Defendants' Motion to Dismiss [doc. #10] is **GRANTED** as to the claim for injunctive relief and all claims against defendant Dorsey and **DENIED** in all other respects without prejudice to filing a motion for summary judgment on these issues. McKinnon's motions for Summary Judgment [docs. ##21, 22] are **DENIED** without prejudice.

**SO ORDERED** this 4th day of September, 2003, at Bridgeport, Connecticut.

_____
Warren W. Eginton
Senior United States District Judge

Exhibit Settlement

13

By James Le McKu
James McKinnon
Lee